### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**HASSAN A. ABDUL, IV**                              **CIVIL ACTION**

**VERSUS**                                          **NO. 17-9108**

**ROBERT TANNER, WARDEN**                           **SECTION: "E"(5)**

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Hassan Abdul, IV, is a convicted inmate currently incarcerated at the B.B. (Sixty) Rayburn Correctional Center in Angie, Louisiana.    In August 2009, he was charged with attempted second-degree murder and possession of a firearm by a convicted felon.[1] The charges were severed before trial.    On May 4, 2011, a jury found him guilty of

---

[1]  State Rec., Vol. 1 of 11, Bill of Information.

attempted second-degree murder.[2]    The State subsequently filed a multiple bill of information.    On May 16, 2011, his motion for new trial was denied and he was sentenced to serve 25 years at hard labor without benefit of parole, probation or suspension of sentence.[3]    The trial court then adjudicated him guilty as a second-felony offender, vacated the original sentence and imposed a sentence of 25 years at hard labor without benefit of parole, probation or suspension of sentence.    That same day, he pleaded guilty to count two of the bill of information and was sentenced to a term of 10 years, to be served concurrently. His counseled and pro se motion to reconsider sentence were both denied.[4]

On direct appeal, he asserted the following four counseled assignments of error:    (1) the evidence was insufficient to support his conviction for attempted second-degree murder; (2) the trial court erred in not charging the jury on voluntary intoxication; (3) his multiple-offender sentence was excessive; and (4) the trial court failed to observe the 24-hour delay under state law between denial of his motion for new trial and his original sentencing.    In a pro se supplemental brief, Abdul raised three additional claims:    (1) the trial court erred in denying his motion for new court-appointed counsel and forcing him to represent himself without following the dictates of *Faretta v. California*; (2) the State suppressed evidence in

---

[2]    State Rec., Vol. 1 of 11, Minute Entry, 5/4/11.

[3]    State Rec., Vol. 2 of 11, Minute Entry, 5/16/11; *see also* State Rec., Vol. 7 of 11, Sentencing Transcript.

[4]    State Rec., Vol. 2 of 11, District Court Orders, 5/20/11 and 6/21/11.

violation of *Brady v. Maryland*; and (3) the trial court erred in finding him to be a second-felony offender.    On April 24, 2012, the Louisiana Fifth Circuit Court of Appeal affirmed the conviction of attempted second-degree murder, vacated his multiple-offender sentence and remanded for further proceedings.[5]    On October 12, 2012, the Louisiana Supreme Court denied his application for writ of certiorari.[6]

In January 2013, the State filed a new multiple bill of information charging Abdul as a second-felony offender.[7]    Following a hearing held March 6, 2013, the trial court adjudicated him as a second-felony offender and sentenced him again to a term of 25 years' imprisonment at hard labor without benefit of parole, probation or suspension of sentence.[8]

Abdul filed a second direct appeal from the newly imposed enhanced sentence.[9]    He argued that the evidence at the multiple-offender hearing was insufficient to support the adjudication because it failed to prove the date of actual discharge from state supervision

---

[5]    *State v. Abdul*, 2011-KA-863 (La. App. 5 Cir. 4/24/12), 94 So.3d 801; State Rec., Vol. 2 of 11.    The appellate court reviewed as error patent whether the evidence was sufficient to prove he was a second-felony offender based on the lack of proof offered by the State as to the 10-year cleansing period.    Finding the evidence insufficient, the court of appeal vacated the multiple-offender adjudication and the enhanced sentence.

[6]    *State ex rel. Abdul v. State*, 2012-KH-1224 and 1226 (La. 10/12/12), 99 So.3d 41; State Rec., Vol. 2 of 11.

[7]    State Rec., Vol. 2 of 11, Multiple Offender Bill, 1/23/13.

[8]    State Rec., Vol. 8 of 11, Minute Entry, 3/6/13.

[9]    State Rec., Vol. 8 of 11, District Court Order, 4/23/13 (construing notice of intent to seek supervisory writs as notice of appeal).

was within the 10-year cleansing period.    On December 12, 2013, the Louisiana Fifth Circuit Court of Appeal affirmed the sentence.[10]    On October 10, 2014, the Louisiana Supreme Court denied his application for a writ of certiorari.[11]

On or about June 18, 2015, Abdul submitted an application for post-conviction relief to the state district court.[12]    In that application, he asserted that (1) the evidence was insufficient to support his conviction for attempted second-degree murder; (2) he was actually innocent; (3) he was denied the right to counsel and forced to represent himself without a proper *Faretta* hearing; (4) he was denied effective assistance of counsel pretrial when a public defender withdrew without notice and when standby counsel failed to disclose exculpatory evidence he needed to defend himself; (5) the trial court erred in failing to declare a mistrial when a juror acknowledged she knew a witness; (6) the trial court improperly admitted the 911 recording; (7) the prosecutor committed misconduct during closing argument; and (8) the trial court should have quashed the arrest warrant based on the false and misleading affidavit.    On October 16, 2015, the state district court denied his

---

[10] *State v. Abdul*, 2013-KA-566 (La. App. 5 Cir. 12/12/13), 131 So.3d 365; State Rec., Vol. 8 of 11.

[11] *State ex rel. Abdul v. State*, 2014-KH-0249 (La. 10/10/14), 150 So.3d 895; State Rec., Vol. 8 of 11.

[12] State Rec., Vol. 3 of 11, Application for Post-Conviction Relief and Memorandum in Support signed and dated June 18, 2015.

application for post-conviction relief.[13]    The district court refused to review the first three claims pursuant to Louisiana Code of Criminal Procedure article 930.4(A), because they had been fully considered on direct appeal.    The court rejected the ineffective-assistance claim on the merits and found claims five through eight were procedurally barred under Louisiana Code of Procedure article 930.4(B), because Abdul failed to raise the claims in the proceedings leading to conviction.    On January 28, 2016, the Louisiana Fifth Circuit Court of Appeal likewise denied his related supervisory writ application.[14]    On August 4, 2017, the Louisiana Supreme Court similarly denied relief and attached and made the district court's written reasons part of its opinion.[15]

On or about September 8, 2017, Abdul filed his federal application for habeas corpus relief, in which he raises the same eight claims for relief asserted in the state courts on collateral review.[16]    He asserts one additional claim that the state courts erred in imposing a procedural bar under Louisiana Code of Criminal Procedure article 930.4(A).[17]    The

---

[13]  State Rec., Vol. 4 of 11, State District Court Order, 10/16/15.

[14]  State Rec., Vol. 4 of 11, *Abdul v. State*, 2015-KH-788 (La. App. 5 Cir. Jan. 28, 2016).

[15]  *State ex rel. Abdul v. State*, 2016-KH-0323 (La. 8/4/17), 223 So.3d 507; State Rec., Vol. 4 of 11.

[16]  Rec. Doc. 1, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.    He does not challenge the guilty-plea conviction for possession of a firearm by a convicted felon.

[17]  In his federal application, Abdul identifies this argument regarding article 930.4(A) separately as claim number one.    The claim will be addressed herein as part of the discussion regarding procedural default.    The remaining claims two through nine

State's response concedes that the federal application is timely and that the claims have been exhausted in the state courts.[18]   The State argues that several of his claims should be rejected as procedurally defaulted and the remaining claims should be denied on the merits.

### Facts

On direct appeal, the Louisiana Fifth Circuit summarized the facts adduced at trial as follows:

> Christopher Young testified that on May 24, 2009, he was working at Knucklehedz,[19]  a bar he said was owned by him and defendant. After the bar closed about 2:45 a.m., Mr. Young went into the office and began "totaling out" the cash from the registers. Defendant was in the office as well. During that time, Mr. Young and defendant discovered that about $20.00 or $25.00 had been misplaced, and defendant became a little angry. Mr. Young then asked Jayven Tipado,[20]  the bartender, to come into the office so that he could question her about the missing money. Ms. Tipado complied with that request, and the problem was subsequently resolved. Afterward, defendant rudely asked Ms. Tipado to leave the office.
>
> After she left, Ms. Tipado sent a text message to Mr. Young saying that she did not mind assisting at the bar, but she was not going to let anybody talk to her that way. After Mr. Young explained to defendant that they needed all the help they could get, defendant had Ms. Tipado come back into the office, after which he apologized to her and paid her more money. Defendant and Ms. Tipado

---

mirror claims one through eight asserted on collateral review in the state courts.

[18]  Rec. Doc. 17.

[19]  The witnesses referred to the bar as "Knucklehedz" and "Knuckleheads." The name "Knucklehedz" will be used in this opinion since that is the spelling shown in the photograph of the bar. Witnesses testified that the bar was located at 1800 Stumpf Boulevard in Gretna in Jefferson Parish.

[20]  Ms. Tipado's first name was spelled different ways in the record; however, the witness herself spelled it as "Jayven."

continued their conversation while Mr. Young continued "totaling out." At approximately 3:00 a.m., Mr. Young said it was getting late, and he suggested that defendant and Ms. Tipado continue their conversation the next day. Defendant agreed and asked Ms. Tipado to leave the office and wait outside.

When defendant turned around, he said, "Chris, you don't think I'll shoot you, huh." When Mr. Young asked defendant what he meant, defendant pulled a gun out from his waistband. Mr. Young did not know if defendant was joking. He asked him to put the gun away. Afterwards, defendant shot Mr. Young. Defendant then ran out the door, got on his motorcycle, and left. Mr. Young walked out of the office into the bar area and screamed for somebody to call the police because he had been shot by defendant. EMS came and took Mr. Young to the hospital. Later on, Mr. Young gave a statement to the police. He also positively identified defendant in a photographic lineup and in open court.

Ms. Tipado testified that she did not remember too much about the night in question, and she did not remember when Mr. Young got shot. She further testified that she had a young child and was reluctant to come to court. Ms. Tipado gave two statements to the police, but she only recalled the second one. Both statements were played for the jury. In her first statement, taken on May 24, 2009 at 4:26 a.m., Ms. Tipado said that when she went into the office, Mr. Young, defendant, and a third person[21] were arguing about money and the way defendant spoke to Ms. Tipado. Defendant, whom she testified was drunk, asked her to step out, and as soon as she did, she heard four shots. Afterwards, Ms. Tipado saw defendant run out of the office with a gun in his hand and then run out the door of the bar. She subsequently heard defendant's motorcycle pull off.

In her second statement taken on July 23, 2009, Ms. Tipado stated that defendant shot Mr. Young at approximately 3:30 a.m. on May 24, 2009. She explained that defendant and Mr. Young had an argument about a receipt and about the rude way defendant spoke to her. Afterwards, defendant asked her to step out of the office, and once she did, she heard at least four shots. Defendant then walked out with a gun, and defendant's wife brought the motorcycle "behind them." Ms. Tipado further stated that she positively

---

[21]  Deputy Demyrus Coffie testified that the third person was a co-owner, Melvin Davis. He further testified that Mr. Davis told him that he observed that defendant entered the office and asked the female to leave, and then Mr. Davis heard gunshots and saw defendant leave the establishment.

identified defendant as the perpetrator in a photographic lineup. She also positively identified defendant in open court.

Dr. Peter Meade, an expert emergency room trauma surgeon, testified that Mr. Young was shot seven times in his lower arm, left leg, abdomen, and buttocks. He further testified that no bullets perforated any organs or major blood vessels, but that all of the victim's injuries were potentially fatal and could have caused permanent injury. Dr. Meade asserted that the victim tested positive for alcohol. [22]  Sergeant Michael Goodwin of the Jefferson Parish Sheriff's Office testified that he recovered three fired cartridge casings from the office. Jené Rauch, an expert firearms and toolmark examiner, testified that all three casings were fired from the same weapon.

After the State rested its case, Hassan Alli–Abdul, defendant's father, testified that he was the owner of Knucklehedz, and that Mr. Young was a bartender and not an owner. Deputy Demyrus Coffie testified for the defense that although he had testified during the State's case that Mr. Young's condition after the shooting was very severe, he testified at a preliminary examination that Mr. Young's injuries were not life-threatening.[23]

### Procedural Default (Claim Nos. 6-9)

In claims six through eight, Abdul asserts that he was denied a fair trial because of juror bias, improperly admitted 911 tapes, and prejudicial prosecutorial remarks made during closing argument.     In claim nine, he argues that the trial court should have quashed the invalid arrest warrant because the affidavit contained false and misleading information.[24]

---

[22]  Mr. Young admitted consuming two drinks after his shift ended.

[23]  *State v. Abdul*, 94 So.3d at 808-09 (footnotes in original).

[24]  The state-court record shows that he did not file a motion to quash the arrest warrant.     Rather, he filed a pro se motion styled Motion for Dismissal of Information. State Rec., Vol. 1 of 11.    Appointed counsel adopted Abdul's pro se motion, which was the subject of two hearings held in December 2010.    *See* Rec. Vol. 1 of 11, Minute Entries, 12/6/10 and 12/10/10.    *See also* Vol. 9 of 11, Transcript of Hearing, 12/6/10 and State

The state courts rejected these four claims raised by Abdul on collateral review as procedurally barred because he had knowledge of the claims, but inexcusably failed to raise the issues in the proceedings leading to his conviction.    La. Code Crim. Proc. art. 930.4(B). In the district court opinion attached to and made a part of the Louisiana Supreme Court ruling, the court explained that in each instance Abdul failed to assert the issue either by objection or pretrial motion.    The Louisiana Fifth Circuit likewise rejected the claims as procedurally barred under Louisiana Code of Criminal Procedure article 930.4(B).    The Louisiana Supreme Court ruled that the first three claims were repetitive under Louisiana Code of Criminal Procedure article 930.4.    These had been raised previously and fully considered on direct review.    As for the remaining claims, he did not satisfy his burden of proof on post-conviction relief and many of the claims were not properly preserved for review.[25]    Additionally, he was not entitled to complain that his self-representation was inadequate.

---

Rec., Vol. 6 of 11, Transcript of Hearing, 12/10/10.

[25]  The only remaining claims to which the writ ruling could be referring included those procedurally barred by the lower state courts and the ineffective-assistance-of-counsel claim.    Although the Louisiana Supreme Court did not reference any particular statutory provision, the reasoning plainly encompasses the grounds set forth by the lower state courts under Louisiana Code of Criminal Procedure article 930.4(B), *i.e.*, failing to raise the claim in the proceedings leading to conviction.    Additionally, the Court notes that Louisiana law, specifically Louisiana Code of Criminal Procedure article 841, provides that an "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The "contemporaneous objection" rule is an additional "independent and adequate" state procedural ground which bars federal habeas corpus review. *Wainwright v. Sykes*, 433 U.S. 72, 87–88 (1977); *Duncan v. Cain*, 278 F.3d 537, 541-43 (5th Cir. 2002).

Abdul contends the state courts improperly applied Louisiana Code of Criminal Procedure article 930.4(A) to procedurally bar his claims regarding sufficiency of the evidence/actual innocence and waiver of counsel, thus precluding federal habeas review. However, the State does *not* argue that these claims are procedurally defaulted in these federal habeas proceedings.    Furthermore, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits."    *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994).    The bar does not preclude *federal* habeas review of claims that were considered on direct appeal but found repetitive on collateral review.    Thus, Abdul's assertion is unfounded and the claims will be considered on the merits later in this report.

However, the State's response correctly asserts that Abdul has procedurally defaulted claims six through nine.    Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.    *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).    This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and to federal review of claims that are raised on either direct or habeas review.    *Amos*, 61 F.3d at 338.

A procedural restriction is "independent" if the state court's judgment "clearly and

expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Id*. The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902.

The state courts in this case relied upon the provisions of Louisiana Code of Criminal Procedure article 930.4(B), setting forth the requirements for preservation and presentation of claims on post-conviction review. It is well-settled that Louisiana Code of Criminal Procedure article 930.4(B) is an independent and adequate state procedural ground sufficient to bar federal review of this claim. *See*, *e.g.*, *Holmes v. Vannoy*, Civ. Action No. 16-6894, 2018 WL 941712 at *6 (E.D. La. Jan. 11, 2018), *adopted*, 2018 WL 929602 (E.D. La. Feb. 16, 2018); *Poupart v. Tanner*, Civ. Action No. 15-1340, 2016 WL 8813778, at *20 (E.D. La. Apr. 25, 2016), *adopted*, 2017 WL 1511610 (E.D. La. Apr. 27, 2017); *Welch v. Cain*, Civ. Action No. 12-38, 2015 WL 1526446, at *7-8 (M.D. La. Apr. 2, 2015); *Brown v. Cain*, Civ. Action No. 11–2267, 2011 WL 7042222, at *8 (E.D. La. Dec. 20, 2011), *adopted*, 2012 WL 123288 (E.D. La. Jan. 17, 2012); *Thomas v. Cain*, Civ. Action No. 11–2408, 2011 WL 6046536, at *5 (E.D. La. Nov. 17, 2011), *adopted*, 2011 WL 6028779 (E.D. La. Dec. 5, 2011). The state court's reasons for dismissal of Abdul's claims were therefore independent of federal law and

adequate to bar review of his claims in this Court.

In order to overcome the procedural default doctrine, Abdul must demonstrate "cause" for the default and prejudice resulting from the default, or show that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice.   *Amos v. Scott*, 61 F.3d at 339 (citations omitted).   To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.   *Murray v. Carrier*, 477 U.S. 478, 488 (1986).   In this case, Abdul has not offered any cause for the default that would excuse the procedural bar imposed by the Louisiana courts.   Indeed, he had the ability to raise the issues on his own behalf during the proceedings leading to his conviction but failed to do so, and in some instances, stated on the record expressly that he had no objection.   The Court's review of the record does not support a finding that any factor external to the defense prevented him from raising the claims in a procedurally proper manner.   Nor does the record reflect any action or inaction on the part of the State which prevented him from doing so.   "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."   *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982).

Finally, to establish a fundamental miscarriage of justice, a petitioner must establish as a factual matter that he is "actually innocent" of the crime of conviction.   *Williams v.*

*Thaler*, 602 F.3d 291, 307 (5th Cir. 2010) (citing *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995));

*McGowen v. Thaler*, 675 F.3d 482, 499 (5th Cir.), *cert. denied*, 133 S.Ct. 647, 648 (2012) (citing

*Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) and *Fairman v. Anderson*, 188 F.3d 635,

644 (5th Cir.1999)).    As the Supreme Court has stated, in the context of a procedurally

defaulted claim, " 'actual innocence' means factual innocence, not mere legal insufficiency."

*Bousley v. United States*, 523 U.S. 614, 623 (1998).    Abdul claims there was no physical or

forensic evidence to prove he was the shooter instead of another individual still at large and

points to inconsistencies in the police report describing physical attributes of the shooter

that did not match his own.[26]    His assertions amount to no more than a reconstituted

insufficiency-of-the-evidence claim, and plainly fail to demonstrate that he is factually

innocent of the crime.    Abdul presents no evidence of the type necessary to support a claim

of actual innocence that would excuse his procedural default.    Thus, Abdul's claims six

through nine are procedurally barred from review by this Court.

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure

questions of fact, pure questions of law, and mixed questions of both.    A state court's purely

factual determinations are presumed to be correct and a federal court will give deference to

the state court's decision unless it "was based on an unreasonable determination of the facts

---

[26]  Rec. Doc. 1-1, pp. 33-35.

in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1) have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the

14

particular state prisoner's case."   *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.   A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.   *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").   "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.   *Harrington v. Richter*, 562 U.S. 86, 102 (2011).   Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."   *Richter*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

### A. Sufficiency of the Evidence and Actual Innocence

Abdul contends the evidence was insufficient to convict him of attempted second-degree murder because the State did not prove his identity as the perpetrator or that he had specific intent to kill.   He claims the jury should have accepted the defense theory that

someone other than Abdul shot the victim because the evidence showed a third person was present in the office at the time of the shooting.     He disputes that specific intent was established because the State could not produce a weapon recovered from the scene or credible testimony by the victim or the treating physician that the victim was shot seven times.

To the extent Abdul attempts to establish an independent claim of actual innocence by citing purported deficiencies in the State's evidence, the United States Supreme Court has yet to hold that federal habeas relief is available based on a freestanding claim of actual innocence.     *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).     Regardless, Abdul has offered no new evidence and his allegations regarding inconsistent evidence and insufficient evidentiary proof do not satisfy the rigorous burden of proving factual innocence.     *See Herrera v. Collins*, 506 U.S. 390, 416–17 (1993); *see also House v. Bell*, 547 U.S. 518, 554–55 (2006) (petitioner failed to satisfy the "extraordinarily high" burden for a "hypothetical freestanding innocence claim" in capital case).

The Louisiana Fifth Circuit rejected his sufficiency-of-the-evidence claim on direct appeal because the evidence sufficed to prove beyond a reasonable doubt that Abdul was the perpetrator and that he had specific intent to kill the victim.     The Louisiana Fifth Circuit reasoned:

> In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been

proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Neal*, 00–0674, p. 9 (La. 6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).

In cases involving circumstantial evidence, the trial court must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA–R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Mitchell*, 99–3342, p. 7 (La. 10/17/00), 772 So.2d 78, 83; *State v. Washington*, 03–1135, p. 4 (La. App. 5 Cir. 1/27/04), 866 So.2d 973, 977.

Defendant was convicted of attempted second degree murder in violation of LSA–R.S. 14:27 and 14:30.1. Second degree murder is the killing of a human being when the offender has specific intent to kill or inflict great bodily harm. LSA–R.S. 14:30.1. Attempt is defined as "[A]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended[.]" LSA–R.S. 14:27(A).

The crime of attempted murder requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. *State v. Cepriano*, 00–213 (La. App. 5 Cir. 8/29/00), 767 So.2d 893, 897. Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA–R.S. 14:10(1). Because specific intent is a state of mind, it need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. *State v. Lewis*, 97–160, p. 6 (La. App. 5 Cir. 7/29/97), 698 So.2d 456, 459, *writ denied*, 97–2381 (La. 3/27/98), 716 So.2d 881. It is well established that specific intent may be inferred from the act of pointing a gun and firing at a person. *See State v. Noble*, 425 So.2d 734, 736 (La. 1983); *State v. Slang*, 94–332, p. 4 (La. App. 5 Cir. 11/16/94), 646 So.2d 1037, 1040, *writ denied*, 94–3063 (La. 4/7/95), 652 So.2d 1344.

Encompassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. When the key issue in the case is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. *State v. Billard*, 03–319, p. 5 (La. App. 5 Cir. 7/29/03), 852 So.2d 1069, 1072, *writ denied*, 03–2437 (La. 2/6/04), 865 So.2d 739. Positive identification by only one witness is sufficient to support a conviction. *State v. Williams*, 02–645 (La. App. 5 Cir. 11/26/02), 833 So.2d 497, 503, *writ denied*, 02–3182 (La. 4/25/03), 842 So.2d 398.

Evidence of flight, concealment, and attempt to avoid capture is relevant to show consciousness of guilt from which a jury may use to reach a verdict, and may also include another crime or bad acts. *State v. Davies*, 350 So.2d 586, 588 (La. 1977); *State v. Burbank*, 07–125, p. 4 (La. App. 5 Cir. 10/30/07), 971 So.2d 1173, 1177, *writ denied*, 07–2287 (La. 4/25/08), 978 So.2d 364.

\*    \*    \*    \*

In the present case, the State presented evidence to show that defendant was guilty of attempted second degree murder. The victim, Mr. Young, testified that defendant pulled a gun out and shot him. Additionally, in her statement, Ms. Tipado said that when she went into the office, defendant, Mr. Young, and a third person were in there arguing. Afterwards, defendant asked Ms. Tipado to leave, and as soon as she did so, she heard at least four shots. Ms. Tipado said she then saw defendant run out of the office with a gun in his hand and out the door, after which she heard defendant's motorcycle pull off. Further, Dr. Meade presented testimony that the victim was shot seven times in his lower arm, left leg, abdomen, and buttocks, and that all of the injuries were potentially fatal and could have caused permanent injury. Specific intent may be inferred from the circumstances and from the defendant's actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim's injuries. *State v. Durand*, 07–4, p. 9 (La. App. 5 Cir. 6/26/07), 963 So.2d 1028, 1034, *writ denied*, 07–1545 (La. 1/25/08), 973 So.2d 753. Defendant, on the other hand, indicated in closing argument that the third person in the office committed the offense during a robbery.

After considering the evidence, the jury apparently believed the State's witnesses and rejected defendant's version of events. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the

witnesses will not be reweighed on appeal. *State v. Rowan*, 97–21, p. 7 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.

As indicated above, positive identification by only one witness is sufficient to support a conviction. *State v. Williams*, *supra*. The State clearly met its burden of proving identity of defendant as the perpetrator, as both Mr. Young and Ms. Tipado positively identified defendant as the perpetrator in photographic lineups and in open court.[27]

The court of appeal concluded:

[W]e find that the State showed beyond a reasonable doubt that defendant possessed specific intent. The evidence shows that defendant shot the victim seven times and then had the presence of mind to run away in an attempt to elude capture.    For the above reasons, we find that a rational trier of fact could have found under the *Jackson* standard that the evidence was sufficient to support the verdict.

The Louisiana Supreme Court subsequently denied relief without additional stated reasons.

Because a claim challenging the sufficiency of the evidence presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000).    For the following reasons, the Court finds that Abdul has made no such showing.

The Louisiana Fifth Circuit properly analyzed the sufficiency claim under *Jackson v.*

---

[27]    *State v. Abdul*, 94 So.3d at 811-12.    The Court also rejected Abdul's argument that the State did not prove he had the specific intent to kill given the abundant evidence of his intoxication.    He does not reassert this argument in his federal application.

*Virginia*, 443 U.S. 307 (1979).    The *Jackson* standard requires a determination regarding whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.    *Jackson*, 443 U.S. at 319; *Williams v. Cain*, 408 F. Appx. 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).    Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. Appx. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").    Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.    *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.    *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.' "    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U .S. 390, 402 (1993) (emphasis added)).    Moreover, because the

state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."    *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *see also Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

> Abdul disputes the sufficiency of the evidence in the following respects:
>
> 1) there was no weapon, 2) evidence was not produced before a crime lab for forensic testing, 3) medical records were not disclosed to the Petitioner prior to trial, 4) the victim once he arrived at the hospital checked out of the hospital the next day, (If he was shot seven times, then how is this possible), 5) Ownership paperwork (with Minutes of Special Meeting of The Board of Directors of Jules J. Lounge INC. D.B.A. Club Knucklehedz) for the Petitioner, and the statement that the victim gave on June 5, 2009, 10:34 am., proves the victim committed perjury when he testified that he was an owner of Club Knucklehedz at the Petitioner's trial on May 4, 2011...[], 6) the victim also stated to the Detectives that he never saw the Petitioner with a gun period.[28]

Essentially, he argues that the State lacked physical evidence linking him to the crime or medical evidence to support its case, and that the State's witnesses were not credible.

In this case, the identity of the perpetrator and the requisite elements of proof to convict of attempted second-degree murder, *i.e.*, specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal were established by the bartender, Jayven Tipado, and the uncontroverted testimony of the victim, who worked closely with Abdul.    Tipado's recorded statements were played for the jury and related that she had just left the office where the victim, Abdul and a third person had been arguing when

---

[28]  Rec. Doc. 1-1, pp. 29-30.

she heard multiple gunshots and saw Abdul run out of the office with a gun in his hand and leave the premises.[29]    Investigating officers confirmed that Abdul was not present when they arrived on the scene.    The victim did not recall a third person in the office when he was shot, but was "a thousand percent positive" that Abdul was the person who shot him.[30] Both the victim and Tipado positively identified Abdul as the shooter.    A positive identification by only one witness, even if from the victim alone, is sufficient to support a conviction.    *Holderfield v. Jones*, 903 F. Supp. 1011, 1017 (E.D. La. 1995) (citing *State v. Turner*, 591 So.2d 391 (La. App. 2d Cir. 1991); *State v. Williams*, 08-272 (La. App. 5th Cir. 2008), 3 So.3d 526, 529.

Abdul also contests the State's evidence regarding how many times the victim was shot.    He alleges the records actually showed the victim was shot only twice.    Abdul places much emphasis on the victim's emergency room medical records, which were not introduced at trial.    However, the State introduced a one-page diagram during the detailed testimony of expert trauma surgeon, Dr. Peter Meade, which depicted the victim's seven gunshot wounds.    Dr. Meade quantified that the victim was shot seven times.[31]    He also explained how the wounds the victim suffered were potentially fatal and could result in

---

[29]  State Rec. Vol. 6 of 11, Trial Transcript Day 1 (Jayven Tipado), p. 79; *see also* State Rec., Vol. 10 of 11 (Tipado's transcribed statements).

[30]  State Rec., Vol. 7 of 11, Trial Transcript Day 2, p. 48.

[31]  State Rec., Vol. 6 of 11, Trial Transcript Day 2 (Dr. Peter Meade), p. 15.

permanent injury.[32]    Additionally, the victim testified at trial that he was shot multiple times.    The victim described at trial how Abdul confronted him in the office with a gun and calmly stated, "You don't think I'll shoot you, huh," then shot him at close range repeatedly and immediately fled the scene.[33]    He explained he still bears numerous scars from the multiple gunshot wounds inflicted by Abdul.

The Louisiana Supreme Court has held that deliberately pointing and firing a deadly weapon at close range are circumstances that suffice for a finding of specific intent to kill. *State v. Broaden*, 780 So.2d 349, 362 (La. 2001).    The State's case plainly sufficed to show that Abdul shot the victim multiple times.    Although the State's evidence demonstrated that the victim was shot seven times, the case against Abdul certainly did not hinge on the precise number of times he fired the weapon.    Abdul's emphasis on medical records that were not introduced at trial to disprove that the victim was shot seven times is misplaced.    As the state court correctly determined, the evidence introduced at trial was more than sufficient for the jury to find that Abdul acted with the specific intent to kill the victim.

Finally, as to his attempt to challenge the jury's credibility determinations based on company ownership or inconsistent statements, the jury considered the evidence presented at trial and Abdul's arguments made in the context of his self-representation and cross-examination of the witnesses, and obviously credited the State's witnesses' testimony.    The

---

[32]  State Rec., Vol. 6 of 11, Trial Transcript Day 2, pp. 15-18.

[33]  State Rec., Vol. 6 and 7 of 11, Trial Transcript (Chris Young), pp. 32-39, 43-48.

Court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses.    *Jackson*, 443 U.S. at 319; *see also Schlup v. Delo*, 513 U.S. at 330.

When the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational.    For these reasons, Abdul cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

*B. Waiver of Counsel and Self-Representation*

Abdul claims that he was constructively denied counsel by the trial court's decision to allow him to proceed pro se when he truly desired only substitute appointed counsel due to a conflict, but that request was denied.    He contends that he did not voluntarily waive counsel or explicitly assert his right to self-representation.    He also claims that the trial court subjected him to self-representation without a proper hearing pursuant to the dictates of *Faretta v. California*, 422 U.S. 806 (1975).

On direct appeal, the Louisiana Fifth Circuit considered and rejected the claim, raised in a pro se capacity, as follows:

**PRO SE ASSIGNMENT OF ERROR NUMBER ONE**

*Whether, a "structural impairment" occurred in the Sixth Amendment due to "Conflict of Interest" not addressed during April 4, 2011 and April 18, 2011 proceedings contrary to the holding announced in State v. Cisco, 861 So.2d 118 (La.2003), and thereafter—compelled defendant to represent himself without*

*discharging Faretta v. California, 422 U.S. 805 [sic] [95 S.Ct. 2525, 45 L.Ed.2d 562] (1976[1975]) criteria?*

Here, defendant indicates that the trial judge erred by denying his motion to appoint new counsel. He argues that he was forced to represent himself with the assistance of the same counsel he sought to replace. Defendant contends that he and his counsel had conflict, which violated his Sixth Amendment right to conflict-free counsel. He asserts that the conflict arose when his counsel told him he was guilty and that God could not help him.[34] Defendant further asserts that once the conflict of interest was made known to the trial judge, an inquiry under *State v. Cisco*, 01–2732 (La.12/3/03), 861 So.2d 118, *cert. denied*, 541 U.S. 1005, 124 S.Ct. 2023, 158 L.Ed.2d 522 (2004), should have been applied. Lastly, defendant indicates that he was compelled to represent himself without the criteria in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), being met.

On April 1, 2011, defendant filed a motion for substitution of counsel arguing that his attorney, Powell Miller, had not and would not prepare an adequate defense for him on pre-trial issues and at trial. On April 4, 2011, at a hearing on the motion, defendant asked the trial judge for another State-appointed attorney; however, that request was denied because the trial judge explained that defendant did not have the right to pick and choose a particular public defender. She remarked that the trial had been set many times and that his trial was in less than 30 days. The trial judge stated that defendant could hire another attorney. Defendant's counsel noted that defendant's second choice was to represent himself, which the trial judge said defendant could do.

Afterwards, the trial judge told defendant she had to advise him of the dangers and disadvantages of self-representation, and that she had to determine whether he had the capacity to represent himself, and that he was literate and competent. Defendant told the trial judge that he had completed the twelfth grade, after which the trial judge said that self-representation was almost always unwise and may be detrimental. She informed the defendant that he would receive no special treatment and would have to follow all of the rules of law and criminal procedure. Defendant knew the charges against him and that the maximum penalties for attempted second degree murder and possession of a weapon by a convicted felon were fifty years and fifteen years, respectively.

---

[34] Defense counsel specifically denied making this statement.

After a lengthy colloquy, the trial judge allowed defendant to represent himself. She thereafter appointed Mr. Powell as standby counsel to assist defendant with the rules of courtroom procedure and to answer legal questions. The trial judge found that defendant's waiver of right to counsel was knowingly, intelligently, and voluntarily made, and that the assertion of the right to represent himself was clear and unequivocal.

The Sixth Amendment to the United States Constitution and Louisiana Constitution Article 1, Section 13 guarantee that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. If a defendant is indigent, he has the right to court-appointed counsel. *State v. Reeves*, 06–2419, p. 37 (La. 5/5/09), 11 So.3d 1031, 1057, *cert. denied*, 558 U.S. 1031, 130 S.Ct. 637, 175 L.Ed.2d 490 (2009). The right of a defendant to counsel of his choice has been implemented by LSA–C.Cr.P. art. 515, which provides in pertinent part that, "Assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of counsel assigned by the court." An indigent defendant does not have the right to have a particular attorney appointed to represent him. An indigent's right to choose his counsel only extends to allowing the accused to retain the attorney of his choice if he can manage to do so, but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. *Id*.

The question of withdrawal or substitution of counsel largely rests within the discretion of the trial judge, and his ruling will not be disturbed in the absence of a clear showing of an abuse of discretion. *See State v. Leger*, 05–11, p. 43 (La. 7/10/06), 936 So.2d 108, 142, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).

In *Cisco, supra*, the Supreme Court set forth the law regarding conflicts of interest as follows:

> The right of a criminal defendant to the assistance of counsel during the proceedings against him is a cornerstone of our legal system. "To be more than just a hollow right, our law requires that assistance of counsel be effective." As a general rule, therefore, Louisiana courts have held that an attorney laboring under an actual conflict of interest cannot render effective legal assistance to the defendant she is representing.

>The issue of conflicting loyalties usually arises in the context of joint representation, but it can also arise "where an attorney runs into a conflict because he or she is required to cross-examine a witness who is testifying against the defendant and who was or is a client of the attorney." In a pretrial context, regardless of how the conflict of interest issue arises, the trial court has two options to avoid a conflict of interest: appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interest is too remote to warrant separate counsel. Failure to do one or the other in a case in which an actual conflict exists requires reversal.... Accordingly, in this case we are called upon to determine whether an actual conflict of interest existed and, if so, whether the defendant knowingly and intelligently waived his right to conflict-free counsel and whether the trial court took adequate steps to assure that defendant was afforded the very important requisite that the defendant's representation be conflict free.

>*Cisco*, 01–2732 at 16–17, 861 So.2d at 129–30 (citations omitted).

Because the record in *Cisco* did not establish that the defendant knowingly and intelligently waived his right to the assistance of conflict-free counsel, the Supreme Court reversed the defendant's convictions and sentence. *Cisco*, 01–2732 at 25, 861 So.2d at 134–35.

In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court recognized a defendant's Sixth Amendment right to conduct his own defense by making a knowing and voluntary waiver of his right to counsel and thereby asserting his right to represent himself. Assertion of that right "must also be clear and unequivocal." *State v. Bell*, 09–0199, p. 17 (La. 11/30/10), 53 So.3d 437, 448, *cert. denied*, ––– U.S. ––––, 131 S.Ct. 3035, 180 L.Ed.2d 856 (2011).

In accepting a waiver of counsel, the trial court should advise the defendant of the nature of the charges, the penalty range for the charges, and the dangers and disadvantages of self-representation, such as the failure to recognize objections to inadmissible evidence and the inability to adhere to technical rules governing trials. *State v. Bruce*, 03–918 (La. App. 5 Cir. 12/30/03), 864 So.2d 854, 857. In addition, the court should inquire into the defendant's age,

education and mental condition, and should determine according to the totality of circumstances whether the accused understands the significance of the waiver. Id.

Whether a defendant has knowingly, intelligently, and unequivocally asserted the right to self-representation must be determined on a case-by-case basis, considering the facts and circumstances of each case. *State v. Leger*, 05–11, p. 53 (La. 7/10/06), 936 So.2d 108, 147–48, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).

Courts must indulge in every reasonable presumption against a waiver of counsel. *State v. LaGarde*, 07–288, p. 10 (La. App. 5 Cir. 10/30/07) 970 So.2d 1111, 1119. The trial court is given much discretion in determining whether the defendant's waiver was knowing and intelligent. *Id.*, 07–288 at 12, 970 So.2d at 1120. An appellate court should not reverse the trial court ruling absent an abuse of its discretion. Id. The failure of a trial court to secure a valid waiver of counsel constitutes reversible error. *Bruce, supra*.

First, we find that the trial judge did not err by denying defendant's motion to appoint new counsel, as it does not appear that defense counsel had an actual conflict of interest. The record does not show that defense counsel was simultaneously representing defendant and a State witness, nor does the record show that defense counsel was required to cross-examine a witness who was testifying against the defendant and who was a client of the attorney. Because an actual conflict of interest did not exist, the trial judge was under no obligation to determine whether defendant knowingly and intelligently waived his right to the assistance of conflict-free counsel.

Additionally, we find that the trial judge did not abuse her discretion by allowing defendant to represent himself with the assistance of counsel. During the *Faretta* hearing, the trial judge ascertained that defendant knew the nature of the charges and the maximum penalties for the charges. The trial judge also advised defendant of the dangers and disadvantages of self-representation, and defendant indicated that he understood them. In addition, the trial judge determined that defendant had a twelfth grade education. He responded affirmatively when asked if he was positive that he wanted to represent himself. In light of the foregoing, it appears clear that defendant's waiver of right to counsel was knowingly, intelligently, and voluntarily made, and that the assertion of the right to represent himself was clear and unequivocal. This

assignment of error is without merit.[35]

The Louisiana Supreme Court likewise denied relief.

The United States Fifth Circuit Court of Appeals has succinctly summarized the controlling legal principles as set forth by the United States Supreme Court for claims involving waiver of counsel and self-representation:

> The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the assistance of counsel before he can be validly convicted and punished by imprisonment.[36] However, a criminal defendant that is unwilling to be represented by counsel has the right to forgo the assistance of counsel and conduct his own defense.[37] The decision to proceed pro se must be made voluntarily, knowingly, and intelligently, and it is the trial judge's responsibility to ensure that this is the case.[38]
>
> When waiving counsel at trial in order to proceed pro se, the criminal defendant "should be made aware of the dangers and disadvantages of self-representation."[39] In order to determine if the criminal defendant has effectively waived the right to counsel, this court has stated that "a district court must consider the totality-of-circumstances."[40] This requires consideration of various factors including

---

[35] *State v. Abdul*, 94 So.3d at 813-16 (footnote in original).

[36] *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

[37] *Id.* at 834, 95 S.Ct. 2525.

[38] *Id.* at 835, 95 S.Ct. 2525 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

[39] *Iowa v. Tovar*, 541 U.S. 77, 89, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (quoting *Faretta*, 422 U.S. at 836, 95 S.Ct. 2525).

[40] *United States v. Virgil*, 444 F.3d 447, 453 (5th Cir. 2006) (citing *United States v. Davis*, 269 F.3d 514, 518 (5th Cir. 2001)).

the defendant's age and education, and other background, experience, and conduct. The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant, and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving.[41]

The Supreme Court "[has] not ... prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel,"[42] and this court has emphasized that "there is no sacrosanct litany for warning defendants against waiving the right to counsel."[43] "[T]he district court must exercise its discretion in determining the precise nature of the warning."[44]

The presence of standby counsel does not satisfy the right to counsel,[45] and harmless error review is unavailable if a court errs in denying a criminal defendant the right to counsel at trial.[46] When raised in a collateral attack, the burden rests on the criminal defendant to prove that his waiver of counsel was ineffective.[47]

*Landry v. Cain*, 445 F. Appx. 817, 822-23 (5th Cir. 2011) (footnotes in original).    The validity

of a waiver of counsel and request for self-representation is a mixed question of law and fact

---

[41]    *Id.* (quoting *Davis*, 269 F.3d at 518).

[42]    *Tovar*, 541 U.S. at 88, 124 S.Ct. 1379.

[43]    *Virgil*, 444 F.3d at 453 (internal quotation omitted) (quoting *United States v. Jones*, 421 F.3d 359, 364 (5th Cir. 2005)).

[44]    *Davis*, 269 F.3d at 519.

[45]    *Virgil*, 444 F.3d at 453.

[46]    *See United States v. Cronic*, 466 U.S. 648, 659 & n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *see also Virgil*, 444 F.3d at 455–56.

[47]    *Tovar*, 541 U.S. at 92, 124 S.Ct. 1379.

that requires a determination on federal habeas review as to whether the denial of relief by the state courts was contrary to or an unreasonable application of Supreme Court law. *White v. Cain*, Civ. Action No. 12-2906, 2014 WL 3096108, at *6 (E.D. La. July 7, 2014) (citing *Brewer v. Williams*, 430 U.S. 387, 397, n. 4, 403-04 (1977) and *Miller v. Fenton*, 474 U.S. 104 (1985).

Abdul argues that his waiver of counsel was involuntarily because he had no alternative but to represent himself once the trial court denied his motion for substitution of appointed counsel.    Abdul believed that his appointed counsel was not advocating strongly enough for him.    The record shows that public defender, Powell Miller, assumed representation on his behalf in place of public defender, Jake Lemmon, in August 2010. Abdul continued to file numerous pro se motions throughout the representation.    On December 6, 2010, the trial court held a hearing on some of Abdul's pro se defense motions. The State objected on grounds that Abdul was represented by counsel.    The trial court commented at this time that his appointed counsel could adopt Abdul's motions or withdraw them, or Abdul may choose to represent himself, but that Miller needed to have that conversation with Abdul in order to determine how to proceed at the next scheduled hearing on December 10, 2010.[48]    Miller agreed to adopt Abdul's motions and argued them on Abdul's behalf.[49]    The motions were denied on December 10, 2010.

---

[48]  State Rec., Vol. 9 of 11, Transcript of Hearing, 12/6/10, pp. 25-26.

[49]  State Rec., Vol. 6 of 11, Transcript of Hearing, 12/10/10, p. 8; *see also* State Rec.,

On or about April 1, 2011, Abdul filed a motion to substitute counsel.    That motion alleged that his appointed counsel "has not and will not prepare an adequate defense for the defendant at trial (and at pretrial)."    He requested specifically the appointment of "another state attorney (public defender) or (myself) Mr. Hassan Abdul."[50]

On April 4, 2011, the trial court held a hearing on Abdul's pro se motions, including his motion for substitution of counsel.    Abdul first asked for another state-appointed attorney.    The trial court informed him, "[Y]ou do not get to pick and choose who you want as a Public Defender...[.] You do not get a second appointment and I'm quite sure you can understand why."[51]    The trial court told Abdul he had the option to retain private counsel, but also observed that Abdul had requested a speedy trial and had a May 2, 2011 trial date scheduled.    Miller informed the trial court that Abdul's second choice was to represent himself.    Abdul explained, "[M]y attorney and I, we're not on the same page. My last visit, he told me I was guilty and that God can't help me right now."[52]    Miller flatly denied making any such statement.    Abdul went on to explain, "I mean, I'd rather represent myself and have someone to assist me, if Mr. Tompson can give me an assistant."[53]    The trial court

---

Vol. 1 of 11, Minute Entry, 12/10/10.

[50]  State Rec., Vol. 1 of 11, Motion for Substitution of Counsel, 4/1/11.

[51]  State Rec., Vol. 6 of 11, Transcript of Hearing, 4/4/11, p. 6.

[52]  *Id*. at 8.

[53]  *Id*. at 9.

informed him that Mr. Tompson (Chief Public Defender) will likely have Mr. Miller assist him.

The trial court then had a colloquy with Abdul regarding self-representation to ensure he was aware of the dangers and disadvantages of self-representation and that he fully understood the undertaking.[54]    The trial court took into consideration that Abdul was 39 years old and had a twelfth grade education.    The trial court also expressly affirmed Abdul's understanding of the following as explained to him by the trial court:

> You're entitled to and will receive no special treatment by the Court during your trial.    You must follow all of the technical rules of law, criminal procedure and evidence and will be subject to the same rules that govern attorneys.
>
> The prosecution will be represented by an experienced professional attorney who will not go easy on you just because you're not a lawyer.
>
> You will receive no more library privileges than any other prisoner who represents himself.    You will have no extra time for the preparation, no staff or investigators.
>
> You must follow the rules of procedure and rules of behavior in court. If you become disruptive, the right of self-representation will be taken away.
>
> Whatever the outcome of the trial, you will not be able to claim that you received inadequate representation.[55]

Abdul agreed he had given the matter a lot of thought since his arrest, discussed the matter with family members, friends or advisors, and he understood the charges against him. When the trial court inquired what those charges were, Abdul properly stated the charges

---

[54]  *Id.* at 13-16.

[55]  *Id.* at 14.

and the penalties he knew he faced for those charges.     At the end of the colloquy, the trial judge asked him if he was positive he has made up his mind to represent himself.     Abdul replied, "Yes, ma'am."[56]     The trial judge further warned that he had no right to be co-counsel in the case.     He would represent himself and Mr. Miller would not be there to ask questions, conduct voir dire or anything like that.     Abdul would have to do all of that himself.     Abdul stated he understood.     The trial court ruled that Abdul would be allowed to represent himself and appointed Mr. Miller as standby counsel, but instructed that "[h]e will have no responsibility for the trial of your case, as you will not permit that."[57]     The trial court explained to him the limited function of standby counsel and Abdul acknowledged he understood.     The trial court concluded that Abdul's "waiver of right to assistance of counsel is knowingly, intelligently and voluntarily made and the assertion of the right to represent himself is clear and unequivocal."[58]

Abdul persisted in his attempt to have Miller removed as his assistant.     On April 6, 2011, he sent a letter to the trial judge with an enclosed copy of the letter Abdul sent to Mr. Tompson asking for different appointed counsel.     In that letter, he explained that he had been sworn-in to represent himself, but that he wanted Tompson to assign him a different

---

[56]  *Id.* at 16.

[57]  *Id.* at 17.

[58]  *Id.*

attorney besides Miller to assist him because they "cannot and will not get along."[59]     Also

on April 12, 2011, Abdul wrote the trial judge advising that Miller had not provided

documents he needed and asking that the judge "grant [him] another assistant."[60]

On April 18, 2011, the trial court held another hearing with Mr. Tompson present

regarding Abdul's request for another state-appointed attorney to assist with trial.     Abdul

explained that Miller was doing absolutely nothing for him and was no help.     He was

adamant that he did not want Miller either to represent him or serve as standby counsel

because he felt that Miller was against him.     Once again, Abdul steadfastly maintained on

the record that he wanted to represent himself.[61]     Mr. Tompson explained again to Abdul,

as he had in response to his numerous letters, that indigent defenders had no right to choose

different appointed counsel and that he could not appoint another standby counsel for him.

The trial court denied the request to substitute standby counsel.

Abdul's waiver of counsel was not rendered involuntary simply because he felt the

need by his own volition to forego representation by able professional counsel in favor of

self-representation, perceiving himself as a more zealous advocate in his own defense.     At

the same time Abdul was imploring the court for a speedy trial, he filed a motion to substitute

counsel only one month before his scheduled trial date.     Not only did he have no right to

---

[59]     State Rec., Vol. 1 of 11, Abdul Correspondence, 4/6/11.

[60]     *Id*., Abdul Correspondence, 4/12/11.

[61]     State Rec., Vol. 6 of 11, Hearing Transcript, 4/18/11, p. 9.

select a different public defender, *United States v. Mesquiti*, 854 F.3d 267, 272 (5th Cir. 2017),

but he also failed to allege a conflict of interest or demonstrate objectively that counsel was

deficient and incapable of providing him competent representation.    As the Fifth Circuit

explained in *Mesquiti*, "because 'indigent defendants have no right to appointed counsel of

their choice,' we have held that 'a defendant's refusal without good cause to proceed with

able appointed counsel constitutes a voluntary waiver of' the right to counsel."    *Id.* (citing

*United States v. Fields*, 483 F.3d 313, 350 (5th Cir. 2007) (quoting *Richardson v. Lucas*, 741

F.2d 753, 757 (5th Cir. 1984)).    Abdul refused representation by competent appointed

counsel without good cause and decided to proceed pro se.    As the state court reasoned, no

actual conflict existed between Abdul and appointed counsel.    Abdul's statements about

Miller at the start of trial also contradict the allegations he made in his motion for

substitution and suggest that his assertions were unfounded.    He candidly admitted Miller

"was helping good."    In fact, he stated, "He's great.    He's helping me fine."    Abdul

explained, "I didn't mean to say horrible things.    I just was wanting him to help me more."[62]

Under these circumstances, his choice cannot be considered involuntary such that he was

effectively denied counsel.    *See e.g.*, *United States v. Mesquiti*, 854 F.3d at 271-72; *United

States v. Washington*, 596 F.3d 926, 938-39 (8th Cir. 2010); *Abara v. Palmer*, Civ. Action No.

3:10-00688, 2017 WL 4127661, at *5-6 (D. Nev. Sept. 18, 2017); *Simmons v. Vannoy*, Civ.

Action No. 17-12120, 2018 WL 2225133, at *15-16 (E.D. La. Apr. 24, 2018).

---

[62]  State Rec., Vol. 6 of 11, Transcript (May 2, 2011), pp. 42-43.

Abdul's waiver of counsel in favor of proceeding pro se was clear and unequivocal and made knowingly and intelligently with a full understanding of the attendant difficulties and disadvantages.    *See Landry v. Cain*, 445 F. Appx. at 823-25 (finding the waiver of counsel was effective as having been knowingly and intelligently made and reversing federal district court's grant of federal habeas relief); *Randolph v. Cain*, 412 F. Appx. 654, 658-59 (5th Cir. 2010) (upholding district court's determination rejecting *Faretta* claim under Section 2254(d)(2) because no warnings were required absent an unequivocal waiver of counsel). Abdul never wavered in his quest for self-representation, even when his request for substitute standby counsel was denied.    He plainly stated his request to forego appointed counsel and represent himself both in writing, as part of his motion for substitution of counsel, and verbally at hearings held on April 4 and April 18, 2011.    Once that request was made in April 2011, the trial court conducted the proper *Faretta* hearing.    The trial court ensured on the record that Abdul understood all of the ramifications of waiving his right to counsel and representing himself.

Accordingly, for the reasons expressed, the state court's determination that Abdul's waiver of right to counsel was knowingly, intelligently, and voluntarily made, and that the assertion of the right to represent himself was clear and unequivocal was entirely reasonable.    Abdul has failed to demonstrate that the state court's denial of this claim was contrary to or an unreasonable application of controlling Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding.

*C. Ineffective Assistance of Counsel*

Abdul claims that his initial public defender, Jake Lemmon, was constitutionally ineffective because he abandoned Abdul when he failed to file a motion to withdraw as counsel and did not provide him with relevant file materials.    He also claims that standby counsel Powell Miller was ineffective for failing to provide him with exculpatory evidence, *i.e.*, the victim's medical records, prior to trial and for failing to investigate when Abdul's legal documentation was confiscated and destroyed by prison officials.    The state courts rejected the ineffective-assistance claim raised for the first time on collateral review.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected his ineffective-assistance-of-counsel claims on the

merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal habeas corpus review of ineffective-assistance-of-counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).    For the following reasons, the state court's determination is neither contrary to, nor an unreasonable application of, clearly established federal law.

On August 20, 2009, the trial court appointed a public defender to represent Abdul. The record reflects two separate requests for appointment of counsel dated August 20, 2009 (Calvin Fleming) and September 28, 2009 (Jake Lemmon).    Mr. Lemmon appeared on his behalf for the last time at a hearing held April 19, 2010.    As of July 12, 2010, a minute entry reflects that Abdul was represented by public defender's office attorney, Powell Miller. Miller continued to represent him until Abdul waived his right to counsel and sought to represent himself in April 2011.

By order of the court, from August 20, 2009 until he waived his right to counsel, Abdul was represented by appointed public defender's office counsel through the 24th Judicial District Indigent Defender Board.    At no time did Abdul seek to retain private counsel.    He

continued his representation by the public defender's office.    Abdul cannot point to any time when he was without appointed counsel due to the permissible substitution of public defenders.    Thus, he was not abandoned as he alleges.    At most, he complains of lack of notice as to the substitution of counsel.    However, he does not allege how he was prejudiced by any failure to notify him of Miller's replacement as the appointed public defender for Lemmon.    Whether or not he received notice from Lemmon, the course of the proceedings would not have changed.    Abdul was absolutely entitled to be represented by public defender counsel, but he was not entitled to any particular public defender of his choice.    *United States v. Contreras*, 558 F. Appx. 400 (5th Cir. 2014) (citing *United States v. Mitchell*, 709 F.3d 436, 441 (5th Cir. 2013)).

He also complains that Lemmon withdrew before providing him with replacement file documentation that was confiscated from Abdul in prison.[63]    Again, Abdul fails to show that he suffered any prejudice in this regard considering that Miller assumed representation and continued to pursue the issue for Abdul.    The record shows that Abdul filed several pro se motions relating to this matter alleged to have occurred in March 2010.[64]    Lemmon raised the issue at the April 19, 2010 pretrial hearing.[65]    He informed the trial court about

---

[63]  Rec. Doc. 1-1, p. 57.

[64]  State Rec., Vol. 1 of 11, Motion for Return of Seized Property filed June 1, 2010; Motion for Judicial Review filed on or about June 25, 2010.

[65]  State Rec., Vol. 5 of 11, Hearing Transcript, 4/19/10, p. 25.

the confiscated records and his having to provide the discovery documents again to Abdul. At the next hearing held August 16, 2010, Miller was present with Abdul and was aware of Abdul's motions and the issues surrounding his confiscated materials.    He informed the trial court that Abdul agreed to pursue the matter civilly rather than as part of his criminal proceedings.[66]    Miller was also instructed to turn over the entire file to Abdul when he exercised his right to self-representation in April 2011.[67]    As of May 2, 2011, Abdul had all the pertinent file materials he needed prior to the start of trial.[68]

Abdul cannot establish prejudice without showing there is a reasonable probability that, but for counsel's omission, *i.e.*, failing to file a notice of withdrawal or provide file documentation, the result of the proceeding would have been different.    Here, Lemmon's purported lack of notice to Abdul about the change in appointed counsel and his failure to provide file materials before substitution did not impact the outcome of the proceedings. Consequently, Abdul has failed to show that the state court made an unreasonable determination when it denied this ineffective assistance claim under *Strickland*.

Next, Abdul claims that Miller failed to provide him with exculpatory medical records of the victim prior to trial that would have impeached the false testimony of Dr. Meade and the victim as to how many times the victim was actually shot.    Abdul refers to the

---

[66]    State Rec., Vol. 6 of 11, Hearing Transcript, 8/16/10, p. 7.

[67]    State Rec., Vol. 6 of 11, Hearing Transcript, 4/4/11, pp. 19-20.

[68]    State Rec., Vol. 6 of 11, Transcript, 5/2/11.

information as "*Brady* material" and argues that the medical records actually showed that the victim was shot only two times, not seven.    The state-court record contradicts his assertion that he was not given the victim's medical records.    Although Abdul now alleges he received only the one-page diagram of the victim's wounds (the only part of the medical records the State introduced at trial), the record reflects a clear admission by Abdul that he received the medical records. [69]    *See State v. Abdul*, 94 So.3d at 817-18 (rejecting his separate *Brady* claim with regard to the victim's medical records, finding that Abdul received the records prior to trial and he failed to show how the alleged suppression undermined confidence in the outcome of trial).    Regardless, even if Abdul could establish that counsel failed to provide him with the victim's medical records, he cannot show that the result of the proceeding would have been any different but for that omission.    The diagram sheet, introduced as evidence at trial without objection, demonstrates that the victim was shot seven times.    With Abdul's limited expertise in medicine, it is highly unlikely that jurors would have adopted his interpretation of the medical records over that of a qualified expert emergency room trauma surgeon with years of experience.    Moreover, the defense would not have benefitted in the least from showing that the victim was shot only two times rather than seven times, under the circumstances described by the victim in this case.    *See, e.g.*, *Trammell v. Cain*, Civ. Action No. 14-2477, 2017 WL 1352234, at *4 (W.D. La. March 17, 2017) (evidence was sufficient to sustain conviction for attempted first-degree murder where

---

[69]    State Rec., Vol. 6 of 11, Transcript, 5/2/11, pp. 7-8.

defendant shot the victim once in the face); *State v. Simmons*, 454 So.2d 408, 409 (La. App. 4 Cir. 1984) (evidence was sufficient to sustain conviction for attempted second-degree murder where defendant shot the victim three times with a .38 caliber revolver).   Thus, he cannot show how he was prejudiced.

Finally, Abdul alleges that Miller was ineffective for failing to investigate pretrial when his legal documentation was confiscated and destroyed by prison officials on March 2, 2010.   He argues that prejudice resulted because he was forced to represent himself without the legal documentation he needed to prepare for trial.[70]   The time frame covering the lost materials presumably spanned about five months, from the time Lemmon assumed representation on September 28, 2009 until the incident on March 2, 2010.   Abdul refers only generally to the lost materials as his "legal documents (entire discovery and transcripts)" with no reference to precisely what items were taken or how those items were pertinent to his defense preparation.

First, the Court notes that Abdul has not shown that counsel's investigation was substandard.   Abdul has presented no evidence as to what investigative steps counsel failed to take in connection with the lost documentation.   Without such evidence, he cannot

---

[70] The factual grounds underlying this particular claim of ineffective assistance of counsel were not alleged in the state district court.   Abdul first asserted the claim in his writ application filed with the Louisiana Fifth Circuit Court of Appeal.   State Rec., Vol. 4 of 11, *Abdul v. State*, 15-KH-788, p. 2 (La. App. 5th Cir. Jan. 28, 2016).   The State's response does not acknowledge the claim.   In an abundance of caution, the Court will exercise its authority to review the claim even though it appears to be unexhausted because it was not raised at each level of state-court review.   28 U.S.C. § 2254(b)(2).

show that counsel performed deficiently.    *Netter v. Cain*, Civ. Action No. 15-584, 2016 WL 7157028, at *11 (E.D. La. Oct. 6, 2016), *adopted*, 2016 WL 7116070 (E.D. La. Dec. 7, 2016). Moreover, the record reflects that Abdul agreed the matter should be pursued with the prison civilly, rather than in the criminal proceedings, and he was subsequently provided with all of the file materials, including discovery, before trial began in May 2011.    Those materials would have included everything contained in the original "discovery packet" provided to Abdul by Lemmon.    To the extent Abdul himself failed in his own trial preparation once he assumed the responsibility of self-representation, he cannot assert an ineffective-assistance-of-counsel claim based upon his own substandard actions or omissions.    *Faretta*, 422 U.S. at 834 n. 46.

Furthermore, even if Abdul had made a showing that counsel was deficient, he would then additionally have to prove that prejudice resulted from the inadequate investigation. To make that showing, he must point to evidence in the record demonstrating that further investigation would have revealed additional information beneficial to the defense.    *See Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Wilson v. Cain*, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), *aff'd*, 641 F.3d 96 (5th Cir. 2011); *Davis v. Cain*, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).    Abdul has not specified what additional evidence he was missing or how that evidence would have been beneficial to his defense.    In fact, as Tompson pointed out in response to some of Abdul's letters, the public

defender's office does not expend funds on transcripts of pretrial motions when they are not particularly relevant to the issues that will be brought up at trial.[71]    In any event, Abdul has not alleged any specific items he was lacking or why the items were material.    Therefore, his claim necessarily fails.    *See, e.g.*, *United States v. Lewis*, 786 F.2d 1278, 1283 (5th Cir. 1986).

Accordingly, the state court's denial of relief on the ineffective-assistance-of-counsel claims was not contrary to or an unreasonable application of *Strickland*.    Thus, Abdul is not entitled to federal habeas corpus relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Abdul's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[72]

---

[71]    State Rec., Vol. 2 of 11, Exhibit A - Correspondence dated March 17, 2011 (attached to Motion for Production of Documents).

[72]    *Douglass* referenced the previously applicable ten-day period for the filing of

New Orleans, Louisiana, this __19th__ day of _____ July _____, 2018.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.